**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AKSHAY KUMAR,<br>Petitioner,<br>v.<br>WARDEN ET AL,<br>Respondents. | Case No. 5:26-cv-04562-MAR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On August 12, 2026, Petitioner Akshay Kumar (A# 221-150-735) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). The clerk issued a Notice of General Order and Briefing Schedule on August 13, 2026, which ordered Respondents to file an Answer to the Petition by August 20, 2026. Dkt. 5. Respondents have not filed an Answer. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release**

**Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. Pet. at 21. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. Dkt. 5. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of India. Pet. at 4. Due to political persecution, Petitioner fled India and arrived in the United States seeking asylum. Id. at 4–5. Petitioner arrived in the United States on or about July 5, 2024, at or near the Arizona border, without inspection. Id. at 5. Petitioner was initially arrested and detained by U.S. Customs and Border Protection and thereafter was released on bond on or about November 4, 2024, after Department of Homeland Security ("DHS") determined that he posed neither a danger to the community nor a flight risk. Id.

At all times since his release, Petitioner has complied with his conditions of release and reporting requirements, timely filed his Form I-589 Application for Asylum and for Withholding of Removal with USCIS well within one year of his arrival, and obeyed all applicable federal and state laws. Id. Petitioner is not currently in removal proceedings before an Immigration Court. Id. Since Petitioner's previous release from custody on bond, Petitioner has had no criminal record, and there has been no material change of circumstances. Id. at 6. There is no evidence of any ATD or reporting violations by Petitioner. Id. Since his previous release, Petitioner has continuously resided in the United States for approximately two years and has developed community ties in California. Id.

On August 9, 2026, Immigration and Customs Enforcement ("ICE") officers re-

detained Petitioner in Fontana, California. Id. at 5. Officers pulled Petitioner over, stated that his case "belongs to Woodland, CA," and asked what he was doing in the area. Petitioner explained that he had come to visit and was going to the gym. Id. Officers checked his identification and stated that his case information was offline because the case is with USCIS; they then told him they needed to arrest him and transported him into ICE custody. Id. There was no warrant based on criminal activity, no claim of flight risk or danger, and no pre-detention hearing. Id. Petitioner remains detained in ICE custody at the Adelanto ICE Processing Center. Id.

At the time ICE re-detained Petitioner his Form I-589 Application for Asylum, Withholding of Removal, and Protection under CAT was, and remains, pending before USCIS. Id. at 6. Petitioner has not been placed in removal proceedings before EOIR; no Notice to Appear has been issued or filed against him; no Immigration Judge has acquired jurisdiction over his case; and no final order of removal has issued. Id. Unlike a detainee who has already been placed in removal proceedings, Petitioner has no administrative avenue—before an Immigration Judge or otherwise—through which to seek a custody redetermination, because no Immigration Judge has jurisdiction over him and no such proceedings exist. Id. at 7.

**III.**

**SUMMARY OF PETITIONER'S CLAIMS**

Petitioner's first claim for relief is that his arrest and detention violate due process because he has a liberty interest in his prior conditional release, there have been no change in circumstances, and he was re-arrested and detained without a pre-deprivation hearing. Pet. at 16–17. Petitioner's second claim for relief is that his arrest and re-detention violates the Administrative Procedure Act ("APA") because he is being treated as subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and thus is barred from receiving any custody redetermination. Pet. at 17–18. Petitioner's third claim for relief is that his re-detention violates the Immigration and Nationality Act ("INA") because Respondents lack authority to detain Petitioner pursuant to 8 U.S.C. §

1225(b)(2). Pet. at 18–19.

Petitioner seeks immediate release from custody on the conditions of his prior release, and an order enjoining Respondents from re-detaining Petitioner without providing constitutionally adequate pre-deprivation process. Pet. at 19. Petitioner also seeks reasonable attorney's fees. Id. at 31.

Respondents failed to present an opposition argument. See Dkt. 7.

**IV.**

**LEGAL STANDARD**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews

v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner has resided in the United States since 2024 after entering the United States to request asylum. Pet. at 5. It is further undisputed that Petitioner was previously released from immigration custody. Id. Petitioner has no criminal history. Id. at 6. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on his previous release from custody, the length of time he lived in the United States, and the ties he built to the community over the past two years. Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."); see also Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). In contrast, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. Martinez Cruz v. Lyons, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases); Pinchi, 792 F. Supp. 3d at 1063.

Furthermore, "[t]here is an unacceptably high risk that the government would

erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." Cruz v. Lyons, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose. Because Petitioner is not in removal proceedings before Executive Office for Immigration Review ("EOIR"), Petitioner has not had a bond hearing. Indeed, it appears no Immigration Judge has jurisdiction over Petitioner's custody determination. Pet. at 2, 6, 7.

Since the initial determination that Petitioner should be released from custody because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, and he has diligently complied with the conditions of his release. See Pet at 6. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. See Garcia v. Noem, No. 25CV3759-LL-BLM, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioner without notice,

reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

Therefore, the Court concludes that Petitioner's arrest on August 9, 20256 without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal.

Feb. 17, 2026).

Given these violations of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release."). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the

---

1 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because no Immigration Judge has jurisdiction to consider Petitioner's request for custody re-determination. Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against

future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. Pet. at 19. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner **AKSHAY KUMAR (A# 221-150-735)** ("Petitioner") from custody (subject only to conditions that were in place prior to his August 9, 2026 detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-

2 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

deprivation bond hearing. The pre-deprivation bond hearing shall occur before a neutral decisionmaker at which the Government bears the burden of proof to show by clear and convincing evidence that there has been a material change in circumstances such that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. **Respondents shall file a notice of compliance within forty-eight hours.**

IT IS SO ORDERED.

DATED: September 1, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE